[No. 24580.    Department Two.    July 27, 1933.]

THE STATE OF WASHINGTON, *on the Relation of Joseph L. O'Brien et al., Plaintiff*, v. THE SUPERIOR COURT FOR KING COUNTY *et al., Respondents*.[1]

[1]Reported in 24 P. (2d) 117.

680

*Edward L. Cochrane* and *J. H. Lynch,* for relators.
*James Tynan,* for respondents.

STEINERT, J.—The Prudential Insurance Company brought an action to foreclose a mortgage held by it on certain real property in Seattle. A decree of foreclosure was duly entered, and the property was thereafter sold and bid in at the sale by the mortgagee for the full amount of its judgment. A petition was then filed seeking a writ of assistance to put the mortgagee purchaser in possession of the premises. An order directed to defendants O'Brien to show cause why the writ should not issue was obtained, and upon a hearing of the evidence adduced the court made findings of fact, conclusions of law and thereupon entered an order directing that the writ of assistance issue.

The cause is here by *certiorari* to review the order of the superior court granting the writ. The O'Briens are here the relators; the insurance company will be referred to as though it were the only respondent.

From the findings made by the superior court upon the hearing of the petition for writ of assistance, it appears that Olaf Elken and wife were formerly the owners and mortgagors of the property here involved. Subsequent to the execution of the mortgage, the relators, on July 17, 1928, entered into an executory contract with the Elkens to purchase the property. In the contract, the relators assumed and agreed to pay the mortgage. The contract was never filed for record. Although the O'Briens were introduced to the respondent as the purchasers of the property and

thereafter made certain interest payments in response to the latter's demands, the court nevertheless specifically found that the contract was never exhibited to the respondent, and that it was never apprised that relators had assumed the payment of the mortgage.

In the foreclosure action, the original mortgagors and also the relators here were made parties defendant, but as to the relators, the complaint merely recited that they had or claimed to have some right, title or interest in and to the premises. The relators answered by way of general denial, but did not set up their contract or the nature of their claim to the property. In the meantime, that is, on December 4, 1930, which was over two years prior to the decree of foreclosure, the relators had filed a declaration of homestead on the property, and ever since that time have been in possession thereof. On December 8, 1930, four days after filing their declaration of homestead, the relators were adjudicated bankrupts. In the bankruptcy proceedings, the mortgage indebtedness was scheduled as a liability and the property mortgaged was listed as an asset. The bankruptcy court awarded the property to the relators as a homestead. On January 13, 1932, prior to the commencement of the mortgage foreclosure action, the relators received their final discharge in bankruptcy.

The relators make three contentions: (1) that a writ of assistance can not issue except where the party seeking the writ has a clear right of possession, and where there has been a prior adjudication of the right of possession; (2) that, under the facts found by the court, the relators were personally liable on the mortgage debt and therefore entitled to remain in possession of the mortgaged premises during the period of redemption; and (3) that the relators' claim of home-

stead was determined in the bankruptcy proceeding and became *res judicata*.

■ The first proposition stated by relators may be accepted as a correct statement of the law. The relators assume, however, that respondent did not have, in point of fact, a clear right of possession, and that there has been no adjudication whatever of such right.

■ These assumptions, in our opinion, are not supported by the record. Whether the respondent had a clear right to possession, was an issue presented by the petition for writ of assistance. That issue was determined in respondent's favor. Whether the adjudication of that right was valid or whether it was erroneous, is a question of law to be determined in this proceeding.

It is true that the decree of foreclosure did not adjudicate the question. From this, the relators argue that there has been no adjudication at all. That conclusion does not follow. The complaint in the foreclosure action did not tender that issue, and moreover, by express language of its decree, the court declined to pass upon it at that time. The right of possession of land sold under execution is regulated by Rem. Rev. Stat., § 602. After sale, and until the period of redemption has expired, the right of possession is determined by statute. *Hagerman v. Heltzel*, 21 Wash. 444, 58 Pac. 580; *State ex rel. Columbia Valley Lbr. Co. v. Superior Court*, 147 Wash. 574, 266 Pac. 731. The purchaser, from the day of sale until a resale or redemption takes place, is entitled to possession of the property, subject to the provision, among others, that, in case of a homestead being selected in the manner provided by law and occupied for that purpose at the time of sale, the judgment debtor shall have the

right to retain possession during the period of redemption.

In *Brandon v. Leavenworth,* 99 Wash. 339, 169 Pac. 867, it was sought to quiet title to certain real estate, to set aside a former sale thereof, and to have the property decreed exempt as a homestead. We there held that the failure to plead a homestead exemption in a former action, in which a deed was set aside for fraud, rendered the former decree *res judicata* upon the subsequent claim of homestead.

In *State ex rel. Federal Land Bank v. Superior Court,* 169 Wash. 286, 13 P. (2d) 890, the relief sought and the procedure followed were almost identical with the case at bar. The principal difference in point of fact was that there the defendants in the foreclosure action defaulted, while here they appeared and entered a general denial. The relators therein contended that, since the respondents had not appeared in the foreclosure action to assert their right of possession during the period of redemption, that question was not thereafter open to them. Discussing that phase of the case, this court referred to the fact that the complaint did not tender the issue as to who would be entitled to such possession and that the decree of foreclosure did not adjudicate it, and specifically remarked that, if the court had intended to adjudicate that question, there would undoubtedly have been some reference to it in the decree. It was further stated that, if the complaint had tendered the issue or if the defendants had appeared by answer and had failed to raise the question, a different situation would have been presented, on which, it was said, no opinion was then to be expressed. In the course of the opinion, it was pointed out that, in the *Brandon* case, *supra,* the defendants had appeared by answer, but had failed to assert their homestead right.

Taking those two cases together, the conclusion to be drawn from them is that, if the issue be tendered by the complaint, or if there be an answer which fails to tender the issue, the judgment would be *res judicata,* or at any rate, in the latter instance, a serious question would be thereby presented.

Bearing in mind the fact that, by Rem. Rev. Stat., § 528, as it now reads, the homestead may be selected at any time before sale, but shall not be exempt from sale unless selected within thirty days after notice in writing of the entry of the judgment, the logic of the two cases just referred to is, and practical reasoning accords with it, that, if the homestead has been created at a time prior to the entry of the decree of foreclosure, the question must be raised by the claimant in that action, if he be a party thereto, or else the judgment will be *res judicata* of the matter in subsequent litigation. If, however, the homestead be declared subsequent to the entry of the decree but within thirty days after notice of such entry and prior to sale, then the claimant is not foreclosed of his right to raise the question, if timely action be taken.

Applying the result of our reasoning to the present situation, we have here a case where the declaration of homestead was made before the decree was entered, and where the the declarant had failed to assert his homestead right in the foreclosure action. But the issue which the court might then have determined was not adjudicated by the decree; on the contrary, jurisdiction was reserved to adjudicate it subsequently in a proper proceeding. Later, however, the very question was presented by the petition for writ of assistance. Relators were served with notice, and appeared in answer to the petition and asserted their rights. The court found against them. There was thus an adjudication of the question, and if the adjudication

be now held valid, it follows that the writ thereupon properly issued. It would be a useless thing to require the respondent to resort to an independent proceeding in ejectment to establish its right of possession, when the court had full jurisdiction to determine, as it did determine, the same matter on the application for the writ.

We hold that the hearing on the petition for the writ was an adjudication of the right of possession. Whether the adjudication is now to be held valid or whether it was erroneous, is another question to be decided, and will be referred to later.

■ Relators next contend that they were personally liable on the mortgage debt, and for that reason alone were entitled to remain in possession of the property. We do not agree with this contention in its entirety. The relators had listed this specific indebtedness, and they had thereafter been discharged by the bankruptcy court. By their discharge, they became relieved of any further liability on the indebtedness. *Rankin v. Blanc,* 143 Wash. 22, 254 Pac. 254. Section 1 (12) of the United States Bankruptcy Law (1898) defines ''discharge'' as meaning the release of a bankrupt from all his debts which are provable in bankruptcy, except such as are excepted by the act. Section 17 of the act provides that a discharge in bankruptcy shall release a bankrupt from all his provable debts, with certain exceptions. An indebtedness of the kind here involved is not included within any of the exceptions of the act.

Although the debt was due in conscience, it was discharged in law. It could be revived only upon a subsequent promise by the bankrupts to pay and an acceptance of the promise by the creditor. Loveland on Bankruptcy (4th Ed.), § 801. In the present action, there is no contention or admission that the debt has

been revived by subsequent promise to pay or otherwise. On the contrary, every conclusion to be drawn from the facts disclosed in the case indicates that relators claim absolution from personal liability.

Viewed from another angle, however, we think that relators' claim of right to remain in possession must be sustained.

At this point, it becomes necessary to refer to and review several of our former decisions touching the question before us. In *Northwest Trust & Safe Deposit Co. v. Butcher,* 98 Wash. 158, 167 Pac. 46, a purchaser of mortgaged premises claimed the right of possession during the period of redemption. We there said:

"Appellants are not judgment debtors, either actual or potential. They did not sign the mortgage note, did not assume the mortgage, did not owe the debt. No money judgment was taken or could have been taken against them . . . Under the statute as it now exists, appellants have no right to retain possession in virtue of their homestead declaration simply because they are not judgment debtors."

While the relators here originally assumed the mortgage, nevertheless they did not owe the debt, because they had been discharged in bankruptcy, and therefore no money judgment could be taken against them. Under the decision of the *Northwest Trust & Safe Deposit Co.* case, it would therefore seem that the relators here would not be entitled to retain possession under their homestead declaration.

In two recent decisions, however, we appear to have taken a somewhat different view, although it was said in each that the *Northwest Trust & Safe Deposit Co.* case was inapplicable or else distinguishable.

In *Union Central Life Ins. Co. v. Fischer,* 169 Wash. 75, 13 P. (2d) 889, wherein the term "judgment

debtor'' used in Rem. Rev. Stat., § 602, was construed, it was held that the mortgagors, as owners of the land, were debtors in the sense that their land was the primary fund out of which the debt must be paid. We said on p. 78:

"The mortgagors were judgment debtors in the sense that the decree of foreclosure operated as a conclusive and final judgment against the mortgagors to the end that the primary fund was subjected to and exhausted in the payment of the mortgage debt. In using the words 'judgment debtor,' the legislature had in mind not only one who was by the record a judgment debtor, but one who occupied that status. While the mortgagee may release the mortgagors from the personal liability for the debt and resort to the primary fund solely, the mortgagee may not thereby deprive the mortgagors of the possession of the premises as a homestead during the redemption period."

That language is applicable here. While the relators were relieved from personal liability upon the mortgage note by reason of their discharge in bankruptcy, nevertheless, since the primary fund, which is the land, was subjected to, and exhausted in, the payment of the mortgage debt, they must be held to be "judgment debtors" under the statute.

In *State ex rel. Federal Land Bank v. Superior Court,* 169 Wash. 286, 13 P. (2d) 890, it was held that the purchaser of mortgaged premises who assumed and agreed to pay the mortgage debt and was made a party to the foreclosure proceeding came within the classification of "judgment debtor" under the statute. The opinion pointed out that the case was to be distinguished from the *Northwest Trust & Safe Deposit Co.* case, *supra,* in that there the defendants were not the original mortgagors, had not assumed the mortgage, and were not liable thereon. Upon the

theory of personal liability on the note and mortgage, there would be a distinction, it is true, between the two cases; but under the theory of the *Union Central Life Ins. Co.* case, there would still be, even in the *Northwest Trust & Safe Deposit Co.* case, the liability of the primary fund, namely, the land. In order, therefore, that there may be no uncertainty in the law upon this question, as we now construe it, we hold that the purchaser of mortgaged premises, when made a party to the suit for foreclosure and against whom the decree runs, becomes a "judgment debtor," and is entitled to the right of possession under Rem. Rev. Stat., § 602.

Relators' third contention is that their claim of homestead was determined in the bankruptcy proceeding, and is *res judicata* here.

Remington on Bankruptcy, § 1342, lays down the pertinent rule as follows:

"The order of the bankruptcy court setting aside or approving the report of the trustee setting aside property as exempt is *res judicata* in the state courts as elsewhere as to all creditors properly notified of the bankruptcy."

Such must be the rule, we think, and this case well illustrates the reason therefor. If, as the respondent asserts, a discharge in bankruptcy relieves the bankrupt of his liability, but at the same time deprives him of the right of homestead already awarded to him under the state statute, then the force of the bankruptcy provision relative to exemption becomes an utter nullity. That which was intended to be a shield and a protection would become a mere trap, and that which the bankrupt would be legally entitled to under the law would be immediately lost to him upon his assertion of his rights. We are satisfied that, when the bankruptcy court entered an order awarding to

relators their homestead right, it became final and binding.

The order of the superior court granting the writ of assistance is reversed.

BEALS, C. J., TOLMAN, BLAKE, and MILLARD, JJ., concur.